IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SPECIALIZED SEATING, INC., <br><br> Plaintiff–Counter Defendant, <br><br> v. <br><br> GREENWICH INDUSTRIES, L.P. d/b/a/ CLARIN, <br><br> Defendant–Counter Plaintiff. | Civil Action No. 05 C 1197 <br><br> Judge James F. Holderman <br><br> Magistrate Judge Valdez |

**CLARIN'S MOTION FOR JUDGMENT AS A MATTER OF
LAW ON PLAINTIFF'S CLAIM THAT CLARIN ENGAGED IN
<u>FRAUD ON THE PATENT AND TRADEMARK OFFICE</u>**

James P. White, Esq.
Laurie A. Haynie, Esq.
J. Aron Carnahan, Esq.
WELSH & KATZ, LTD.
120 S. Riverside Plaza•22nd Floor
Chicago, IL  60606
(312) 655-1500

Robert F. Rabin
Robbins, Salomon & Patt, Ltd
25 East Washington Street
Suite 1000
Chicago, IL 60602
(312) 456-0192

Counsel for Defendant–Counter-Plaintiff
Greenwich Industries, L.P. d/b/a Clarin

**INTRODUCTION**

Clarin hereby moves, pursuant to Fed.R.Civ.P. 52(c), for judgment as a matter of law on Plaintiff's claim that Clarin engaged in fraud on the U.S. Patent and Trademark Office ("PTO"). Specialized has simply not proved, by clear and convincing evidence, that Clarin made any false representations to the PTO, that the alleged misrepresentations were material to the decision to register the Clarin chair mark, and that Clarin made the alleged misrepresentation with fraudulent intent.

Specialized's various theories presented at trial come nowhere near to satisfying the extremely difficult standard for proving fraud on the PTO, as a matter of fact and law. Specialized has articulated four theories as to how Clarin allegedly defrauded the PTO, none of which has merit. First, Specialized claims that it was fraudulent for Clarin to describe the rear stretchers as having a "flat" channel, when in fact the rear stretchers on the chairs sold by Clarin are embossed. However, the PTO would view this as an "insubstantial difference" between the mark registered and the mark as used, which would not affect the validity of the registration, let alone amount to fraud on the PTO. Specialized next claims that Clarin fraudulently failed to disclose to the PTO certain patents relating to its folding chair. However, to the extent that the undisclosed patents contained relevant information, that same information was fully disclosed by Clarin in the other materials provided to the PTO, and it related to limited portions of the claimed overall trade dress in any event, so the failure to disclose these patents was not a material omission. Third, it is claimed that Clarin did not reveal the "purpose" for changing from the A-Back to the B-Back. Clarin's motive for changing from the A- to the B-Back, however, had no bearing on the question of whether the B-Back feature, in itself, is functional, so it was not fraud for Clarin to omit this information from its submissions. Fourth, Specialized claims that Clarin engaged in fraud because it did not tell the PTO that Specialized was making similar chairs. However, case law is clear that Clarin had no obligation to disclose Specialized's infringing use. For these reasons, Specialized's fraud claims fail as a matter of fact and law, and this Court should reject Specialized's attempt to transform what are minor discrepancies, at best, into fraudulent conduct.

In addition to the foregoing, there is absolutely no evidence, or testimony from a single witness, that Clarin deliberately intended to deceive the PTO into registering the Clarin chair

mark under these four theories. Without this crucial evidence of intent, the fraud claims must fail for this reason as well.

When addressing a Rule 52 motion, this Court need not view the facts in a light most favorable to Specialized, but may decide the motion according to its own view of the evidence. In fact, any doubts must be resolved *against* Specialized as the party alleging the fraud. In view of the scant proof of fraud, combined with the evidentiary standards that weigh against a finding of fraud, Clarin respectfully requests that this Court enter judgment in Clarin's favor on Plaintiff's fraud claim.

## ARGUMENT

### I. RULE 52(C) CALLS FOR JUDGMENT IN FAVOR OF CLARIN WHERE SPECIALIZED HAS FAILED TO PROVE THE ESSENTIAL ELEMENTS OF A FRAUD CLAIM, AND THIS COURT NEED NOT WEIGH EVIDENCE IN FAVOR OF SPECIALIZED

Fed.R.Civ.P. 52(c) permits a Court during a non-jury trial to issue a judgment as a matter of law on partial findings against a party pursuing a particular claim when the party, despite being fully heard on an issue, has failed to demonstrate an essential element of the claim in fact or has failed to do so in law. *See* 9 Moore's Federal Practice §52.50[2] (Matthew Bender 3d.). "The judgment on partial findings conserves time and resources by making it unnecessary for the court to hear evidence on additional facts when the result would not be different even if those additional facts were established." *Id.*

Where, as here, plaintiff cannot prove that defendant acted with fraudulent intent, or that defendant made a materially false statement to the PTO, a ruling in favor of defendant under Rule 52(c) is appropriate. *See Brenton Prod. Enters. v. Motion Media*, 1997 U.S. App. LEXIS 27184, *8-10 (6th Cir. Sept. 30, 1997) (district court properly granted defendant's Rule 52(c) motion with respect to plaintiff's claim of fraudulent registration of trademark where plaintiff failed to demonstrate that defendant knowingly made misleading statement of material fact to trademark office). *See also Teradyne, Inc. v. Hewlett-Packard Co.*, 1994 U.S. Dist. LEXIS 4806, *18-24 (N.D. Cal. Mar. 29, 1994) (granting defendant's Rule 52(c) motion with respect to plaintiff's claim of inequitable conduct before U.S. Patent Office because plaintiff failed to provide sufficient proof on element of intent).

In the context of a Rule 52(c) motion, the Court need not view the evidence in a light most favorable to Specialized as the non-moving party. In fact, this Court is within its

prerogative to weigh the evidence, resolve any conflicts in it, and decide for itself where the preponderance lies. *International Union of Operating Engineers v. Indiana Construction Corp.*, 13 F.3d 253, 257 (7th Cir. 1994). *See also Pinkston v. Madry*, 440 F.3d 879, 890 (7th Cir. 2006) (In reviewing a ruling under Rule 52(c), the Court "affords [the non-moving party] no special deference and need not draw any inferences in his favor."); and *Ritchie v. United States*, 451 F.3d 1019, 1023 (9th Cir. 2006) ("In deciding whether to enter judgment on partial findings under Rule 52(c), the district court is not required to draw any inferences in favor of the non-moving party; rather, the district court may make findings in accordance with its own view of the evidence."). Because Specialized has failed to satisfy its heavy evidentiary burden, this Court should exercise its discretion by ruling in favor of Clarin on plaintiff's fraud claim, and conserve the time and resources that would otherwise be expended on this issue if it remained in the case.

## II. FRAUD IN THE PROCUREMENT OF A TRADEMARK REGISTRATION IS VERY DIFFICULT TO PROVE

A fraud charge is extremely difficult to prove, and the courts and the Trademark Board both view charges of fraud in the registration of a trademark as a disfavored defense. 3 Gilson on Trademark Protection & Practice, § 11.08[3][a][ii] (*citing Ecash Techs., Inc. v. Guagliardo*, 127 F. Supp. 2d 1069, 1079 (C.D. Cal. 2000)). In order to prove a claim of fraud on the U.S. Patent and Trademark Office, the party asserting it must establish that: (1) the registrant made a false factual representation to the PTO; (2) the misrepresentation was material to the validity of the registration; and (3) the misrepresentation was made with fraudulent intent. 3 Gilson on Trademark Protection and Practice, § 11.08 [3][a][ii] (citing *Zip Dee, Inc. v. Domestic Corp.*, 900 F. Supp. 1004, 1009 (N.D. Ill. 1995)). Moreover, these elements must be proved by clear and convincing evidence, with any doubts to be resolved against the party alleging the fraud. *Money Store v. Harriscorp Finance, Inc.*, 689 F.2d 666, 670 (7th Cir. 1982). *See also First International Services Corp. v. Chuckles, Inc.*, 5 U.S.P.Q.2d (BNA) 1628, 1634 (TTAB 1988) ("The very nature of the charge of fraud requires that it be proven 'to the hilt' with clear and convincing evidence. There is no room for speculation, inference or surmise and, obviously, any doubt must be resolved against the charging party.")

In connection with the second element of materiality, the test in determining whether a misstatement is material is "whether . . . the Examiner would still have allowed the registration if

3

the misrepresentation was removed from the decision-making mix." *Zip Dee,* 900 F. Supp. at 1010. It is insufficient to show that the information is something the PTO simply "would have considered significant in deciding whether to grant the registration." 3 Gilson on Trademark Protection & Practice, § 11.08[3][a][ii][C].

As for the third element of intent, "[f]raud will be deemed to exist only when there is a deliberate attempt to mislead the Patent Office into registering the mark." *Money Store*, 689 F.2d 670. Any falsity in obtaining a trademark registration may be merely the result of misunderstanding, error, inadvertence, or negligent omission, and if so is not actionable; inadvertence and carelessness are insufficient grounds for fraud. 3 Gilson on Trademark Protection & Practice, § 11.08[3][a][ii][C] (citing *Money Store*, 689 F.2d at 666). There must be "little or no room for speculation or surmise; considerable room for honest mistake, inadvertence, erroneous conception of rights, and negligent omission . . .." *Yocum v. Covington*, 216 U.S.P.Q. 210, 216 (T.T.A.B. 1982).[1]

### III. THERE IS NO CLEAR AND CONVINCING EVIDENCE THAT CLARIN KNOWINGLY MADE A MATERIALLY FALSE STATEMENT TO THE PTO

The facts presented at trial do not establish the three elements of fraud by clear and convincing evidence. Plaintiff claims that Clarin defrauded the PTO during the prosecution of the Clarin chair mark by: (1) describing the rear stretchers of its chair as having a "flat" channel when they are in fact embossed; (2) failing to disclose certain expired Clarin patents; (3) telling the PTO that the B-Back was a modernized version of the chair back, without disclosing that the

---

[1] Fraud in the procurement of a trademark registration and inequitable conduct in the patent context are very different in concept and application. *American Flange & Mfg. Co. v. Rieke Corp.*, 80 U.S.P.Q.2d (BNA) 1397 (TTAB 2006) (citing J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, §§ 31:62-31:64 (4th Ed. 2006)). This is because in the patent context, "the applicant owes the PTO a high level of disclosure" since "a patent is a government grant of exclusive rights which would not exist in any form absent the patent." McCarthy, § 31:64. In contrast, the acquisition of the right to exclude others from the use of a trademark derives from use of the mark and the common law, independent of registration in the Patent Office. Thus trademark rights, unlike patent rights, continue notwithstanding cancellation of the registration. *Morehouse Mfg. Corp. v. J. Strickland & Co.*, 407 F.2d 881, 888 (C.C.P.A. 1969). Accordingly, "the standard of disclosure and hence 'fraud' in the procurement of federal trademark registrations should be, and is, quite different from that in patent procurement," and "[t]he stringent standard of disclosure applicable to patent applications are therefore not appropriate to applications for trademark registrations." McCarthy § 31:65 (*citing Aveda Corp. v. Evita Marketing, Inc.*, 706 F. Supp. 1419 (D. Minn. 1989)). Likewise, there are no trademark cases that apply the "sliding scale" fraud analysis used in patent cases (i.e., that more material omissions require less evidence of intent, and vice versa).

4

B-Back chair design was created to overcome a problem with the previous A-Back chair; and (4) telling the PTO that Clarin was the exclusive manufacturer of B-Back chairs when it knew that Specialized was selling the same chairs. None of these theories, however, amounts to fraud on the PTO.

### A. The Minor Discrepancy Between The Chair As Described In The Registration And The Chair As Sold Is Not Evidence Of Fraud

Specialized alleges that Clarin defrauded the PTO because the verbal description of the Clarin chair trademark states that the two cross bars at the back bottom of the chair have a "flat channel" and rolled edges, when in reality the channel of the two cross bars at the back bottom of the chair is embossed. (*See* TR 27, 374-75.)[2] However, the registered trademark consists of the drawing of the chair as well as the verbal description (TR 497; DX 1), and Specialized does not dispute that the drawing accurately depicts the chair shown in the specimen. (*See* DX 1 and DX 209 Ex. 6, CL002400.) To the extent that the verbal description misstates that the rear cross bars have a "flat" channel, this is an immaterial difference that would have no impact on the registration. David Kera, Clarin's expert witness, who Specialized agreed "is an expert on procedure and practice in the United States Patent and Trademark Office" (Doc. 72 p. 8, par. 27), testified that the presence of the embossing would be an "insubstantial difference" between the chair sold and the drawing. (TR 584-85, Kera.) In fact, this feature is not even shown in the specimen (which is a photograph of the chair from the front), because the embossing is at the bottom of the chair and can only be seen from behind. The fact that the verbal description of the trademark describes the rear cross bar channels as flat rather than embossed does not affect the registrability of the Clarin chair mark, let alone amount to fraud on the PTO.

Regulatory and case law supports Clarin's position on this point. Section 807.12 of the Trademark Manual of Examining Procedure ("TMEP") states that "the drawing of the mark must be a substantially exact representation of the mark as used on or in connection with the goods and/or services." This means that if the difference between the drawing or description of a trademark

---

[2] Specialized did not even come up with this "theory" of fraud until the trial. Specialized's allegations relating to fraud in the Final Pretrial Order make no mention of embossing on the rear cross bars. (*See* Doc. No. 72 pp. 94-95.) Because these allegations of fraud were not in the Final Pretrial Order, they should not be presented at trial. *Elvis Presley Enters. v. Capece*, 141 F.3d 188, 206 (5th Cir. 1998)("once the pretrial order is entered, it controls the course and scope of the proceedings under Federal Rule of Civil Procedure 16(e), **and if a claim or issue is omitted from the order, it is waived, even if it appeared in the complaint**") (emphasis added).

5

does not alter the "overall commercial impression" of the mark as actually used, then registration is proper. *In re Gags and Games, Inc.,* 2005 TTAB LEXIS 461, *15-16 (October 24, 2005) (reversing refusal to register a mark where drawing was different than specimen, because drawing did not "alter in any meaningful way the overall commercial impression created by the mark."). *See also In re R.J. Reynolds Tobacco Co.,* 222 U.S.P.Q. (BNA) 552 (TTAB 1984) (reversing refusal to register mark where drawing was different from specimen, because differences were not important to the overall commercial impression of mark.) In the present case, the drawing and written description of the Clarin chair mark is a "substantially exact" representation of the mark as used, because the drawing accurately depicts the chair, and a Clarin B-Back chair with flat channel cross bars across the rear legs creates the same "overall commercial impression" as a Clarin B-Back chair with embossed cross bars across the rear legs. Therefore, while the written description may contain a minor discrepancy, it is certainly not fraud.

An equally compelling reason for rejecting this theory of fraud is that there is no evidence that Clarin had fraudulent intent when it described the rear cross bars as having a "flat channel." Indeed, it makes no sense that Clarin would purposely describe the channel as being flat when it is embossed, because Clarin stood to gain nothing by this mistaken description. Indeed, the rear cross bars on Specialized's infringing chairs are embossed in an identical manner to Clarin's rear cross bars, so including the embossing in the registration could only help Clarin's infringement case. It is more likely that the description was used because that is how the double tube and channel appears in the other parts of the chair, which are accurately described in the verbal description (*see* DX 1, describing the trademark as a "configuration of a folding chair containing an X-frame profile, *a flat channel* flanked on each side by rolled edges around the perimeter of the chair, two cross bars with a flat channel and rolled edges at the back bottom of the chair, one cross bar with *a flat channel* and rolled edges on the front bottom, protruding feet, and a back support, the outer sides of which slant inward.") At most, this was an inadvertent error which, case law is clear, cannot be the basis for finding fraud. *United German-American Soc. of Greater Chicago v. German American Committee of Greater N.Y., Inc.*, 2002 TTAB LEXIS 410 *31 (Jun. 27, 2002) ("A false misrepresentation occasioned by an honest misunderstanding,

inadvertence, negligent omission or the like rather than one made with a willful intent to deceive' will not constitute fraud.).[3]

For the foregoing reasons, Specialized's claim of fraud based on the verbal description in the trademark registration is baseless and should be rejected.

> **B.    Plaintiff Has Not Proved By Clear And Convincing Evidence That The Undisclosed Patents Would Have Been Material To The Examiner's Decision Or That Clarin Fraudulently Withheld Them**

Plaintiff further claims that Clarin fraudulently procured its trade dress registration because Clarin did not disclose four patents during the prosecution of the registration. The mere fact that these patents were not disclosed during the prosecution of the registration, however, is not clear and convincing evidence that the expired patents were material to the examiner's decision , or that Clarin intended to deceive the PTO.

Section 1202.03(a)(iii) (1997) of the Trademark Manual of Examining Procedure ('TMEP'), which was in effect when Clarin first filed its application to register its trademark, allows the examining attorney to determine whether a configuration is functional by asking the applicant if there are any patents involving the configuration sought to be registered, and states that 'it is important to read the patent carefully to determine if it is actually the design presented in the proposed mark that is the subject of the patent. If it is not, the probative value of the patent as evidence of functionality is diminished." (Ex. 11 to DX 209.) Section 1202.02 of the TMEP (3rd Ed. Rev. 1, 2002), which was in effect when the request for reconsideration of the refusal of Clarin's mark was filed on July 8, 2002, states that if a utility patent does not "*actually claim*" the features presented in the proposed mark or if the features are 'referenced in the patent, but only as arbitrary or incidental features, then the probative value of the patent as evidence of functionality is *substantially diminished or negated entirely*." (Ex. 12 to DX 209, p. CL005740, emphasis added.)

Plaintiff has not proved that the undisclosed patents would have been material under either of the TMEP sections that governed the application process. That is, under the 1997 version, the "subject of the patents" is not "actually the design presented in the proposed mark"

---

[3] Clarin was not trying to hide the fact that its rear cross bars were embossed. The specification for the specimen submitted to the PTO clearly stated that there was embossing on the rear legs ("said stretchers shall be formed and shaped in the double tube and channel design and shall include embossing for added strength.") (TR 79, R. Schoenfeld; PX 40.)

7

(which was the entire configuration of the B-Back chair); and under the 2002 version of the TMEP, none of the four patents "actually claims" the features presented in the proposed mark, and to the extent that a portion of the features of the proposed mark were referenced in the patents, it was "only as arbitrary or incidental features" of the patent. Accordingly, Plaintiff has not shown that Clarin's nondisclosure of the patents was material to, or in anyway affected, the Examiner's decision to grant the registration.

Moreover, there is absolutely no evidence of fraudulent intent on the part of Clarin. The existence of the expired utility patents, standing alone, does not demonstrate that Clarin intended to deceive the PTO by not disclosing them. In fact, according to the relevant section of the TMEP (as quoted above), Clarin had a reasonable basis for not disclosing the existence of the four patents. The evidence is thus insufficient to establish fraud as a matter of law.

A more detailed discussion of the individual patents is set forth below:

### 1. Clarin's Non-Disclosure Of Patent No. 1,600,248 (the '248 patent) Was Not Fraud

Plaintiff claims that it was fraud for Clarin not to disclose the '248 patent to the PTO, because the preferred embodiment of the invention in this patent is allegedly a chair having a double tube and channel construction. (*See* TR 375-76.) Specialized further relies on the introductory language of the patent, which says the patent has

> for its main object to provide a light and durable chair constructed from thin light metal or similar suitable material, and which chair is so shaped and arranged as to provide a maximum of strength with a minimum of material; another object is to make the supporting means of thin bars with parts thereon curved lengthwise and preferably along their longitudinal edges to form reinforcing means and thus offer the greatest amount of resistance to bending and breaking.

(TR 514; Ex. 17 to DX 209, p. CL005782.) However, as Mr. Kera testified, the TMEP instructs trademark examiners to "read the patent carefully to determine if it is actually the design presented in the proposed mark that is the subject of a patent. If it is not, the probative value of the patent as evidence of functionality is diminished." (TR 410-411; TMEP Section 1202.03(a)(iii), Ex. 11 to DX 209.) Mr. Kera testified that it was not fraud for Clarin not to disclose the '248 patent, because the patent claims talk about the means of stopping the seat from going too far, which is not a feature claimed as contributing to the distinctiveness of the Clarin chair: "claims of this patent really do not discuss anything which contributes to the distinctiveness

8

of the configuration of a chair which is Clarin's trademark." (TR 415. *See also* Ex. 17 to DX 209 p. CL005783, Claims 1 - 3.) Mr. Kera further noted that to the extent that the '248 patent mentioned the X-frame or the double tube and channel in the specification, the '058 patent that was disclosed to the PTO showed the X-frame in the drawing as well as the double tube and channel construction. (TR 415-16; *See also* Ex. 6 to DX 209, p. CL002423.) Moreover, Mr. Kera noted that the chair shown in the drawing of the '248 patent was "a different-appearing chair completely." (TR 416.) In fact, the chair shown in the '248 patent was neither an A-Back nor a B-Back and had two bars between the upright portions of the chair; the chair also had a completely different looking seat and feet; did not have any cross bars in front. The chair looked like this:



(*See* Ex. 17 to DX 209, p. CL005784.)

In addition, Clarin separately disclosed to the PTO the utilitarian aspects of the X-frame and the double tube and channel construction (which were the only elements of the registered chair mentioned in the '248 patent) in its advertisements and chair specifications, as follows:

- "'X' Frame Construction. Clarin's hallmark feature to insure strength, prolonged chair life, and enhanced comfort by precisely distributing occupant weight." (TR 429, Kera; DX 209 p. CL005451);

- "Double tube & channel frame. Provides unmatched strength, durability and flexibility. Channel also provides flat surfaces ideal for solid-steel rivets." (TR 430, Kera, DX 209, p. CL005452);

- "Duraflex Action. Assures level seating on uneven surfaces and allows the frame to 'remember' its original shape after use." (TR 431, Kera, DX 209, p. CL005452.);

- "The revolutionary 'X' Frame design and durable 'Double Tube & Channel' construction are what make Clarin's impressive line of products a must for your seating requirements. . . . Clarin provides world-class comfort and quality that will add value to any gathering. Clarin chairs are engineered for the strength, quality, and safety you require, while being designed to provide the comfort and class you deserve." (TR 432, Kera, DX 209, p. CL005453.);

9

- "[T]he double tube and channel leg and frame construction shall functionally resemble that of an I-beam which will allow for built-in resiliency and avoid rigidity, thus diminishing stress, which could cause component parts to break." (TR 433, Kera; DX 209, p. CL005482.)

- "Clarin's Heavy Metal chair is designed and built for stamina, as well as audience safety. The durable steel frame is especially designed to self-fold upon potential collapse. All edges are snag-free, smoothly finished, and free from all scratching, tearing, and pinching hazards." (TR 434, Kera; DX 209, p. CL005486.)

Because, as David Kera testified, the information in the patent was cumulative to information in advertising materials, as well as the '058 patent that was disclosed to the PTO, the Examiner would have allowed the registration even if the '248 patent was disclosed by Clarin. Consequently, its non-disclosure was not material and was not fraud.

### 2. Clarin's Non-Disclosure Of Patent No. 2,137,803 (the '803 patent) Was Not Fraud

Specialized further claims it was fraud for Clarin not to disclose the '803 patent relating to the chair foot. However, as Mr. Kera testified, the '803 patent did not need to be disclosed to the PTO because it merely claimed a means of fastening the feet to the chair legs—the patent itself did not relate to anything that contributed to the appearance of the trademarked chair. (TR 418-19, Kera.) As a result, it was not material to the registration of the Clarin chair trade dress.

### 3. Clarin's Non-Disclosure Of Patent No. 3,127,218 (the '218 patent) Was Not Fraud

Specialized also claims that Clarin should have disclosed the '218 patent, which relates to the ganging device on the chairs, because the patent mentions that the ganging device is inserted into the open channel of the double tube and channel chair. (TR 376. See also DX 209 Ex. 20, p. CL005798.) However, as Mr. Kera testified, this patent was not relevant because it related to the ganging device for the chair, which was not part of the claimed chair. (TR 421-22.) In fact, the introductory language of this patent states that the invention "relates to folding chairs and is *more particularly concerned with such chairs which are adapted to be semi-permanently fastened together in groups . . .*" (TR 540, Kera, emphasis added.) To the extent that the patent mentions the open channel where the ganging device can be attached, this aspect of the double tube and channel frame was previously disclosed to the PTO through Clarin's advertising materials, which state, for example, that the double tube and channel "provides flat surfaces ideal

10

for solid-steel rivets." (TR 430, Kera, DX 209 p. CL005452.) As with the other patents, the trademark registration would have issued even if the '218 patent had been disclosed, so its non-disclosure was not material and hence not fraudulent.

### 4. Clarin's Non-Disclosure Of Patent No. 2,996,331 (the '331 patent) Was Not Fraud

Finally, the '331 patent, which relates to a folding chair with arms, did not need to be disclosed to the PTO, because it is directed to a chair with foldable arms and legs, and the chair subject to the registration doesn't have arms at all. (TR 419-20, Kera.) Also, the '331 patent does not "actually claim" any of the features present in Clarin's chair mark. (Ex. 19 to DX 209, p. CL005794.) As a result, the probative evidence of this patent is "substantially diminished or negated entirely." TMEP Section 1202.02 (3d Ed. Rev. 1 2002). To the extent that the drawing of the chair in this patent shows a double tube and channel and X-frame, these elements were arbitrary or incidental features that were previously disclosed in the '058 patent and the marketing materials, as previously discussed. The non-disclosure of this patent was not material and not fraudulent.

### 5. The Patents Are Immaterial Because Even If The X-Frame Or Double Tube & Channel Serve A Function, This Does Not Make The Overall Trade Dress Functional

The four patents are immaterial for the additional reason that they relate, at most, to a few features of a chair whose trade dress was composed of several elements, including the B-Back back rest; X-frame profile; double tube & channel frame; single cross bar in the front; double cross bars in the back; and protruding feet. (DX 1.) Thus, even if the X-frame or the double tube & channel happened to be functional in a legal sense (which Clarin disputes), the chair was still properly registered because the overall combination of allegedly functional elements was not functional.

Where, as here, Clarin "seeks to protect the overall look of its product – the combination and arrangement of the various features – the appropriate inquiry focuses on the overall trade dress and not on the individual features." *Logan Graphic Products, Inc. v. Textus USA, Inc.*, 67 U.S.P.Q.2d 1470, 1473 (N.D. Ill. 2003). *See also* TMEP § 12.02(a)(v) p. CL005742 ("Generally, dissecting the design into its individual features and analyzing the utility of each separate feature does not establish that the overall design is functional.") Thus, Clarin needed only to prove that

11

the overall look of the B-Back chair was nonfunctional, and even if the individual features of the chair could be considered functional standing alone (such as the tube and channel frame or the X-Frame features), the incorporation of these features into the overall trade dress of the chair is not functional. In *Vaughan Mfg. Co. v. Brikam, Int'l*, 814 F.2d 346 (7th Cir. 1987), the Seventh Circuit rejected defendants' argument that the trade dress of a folding table was functional because the argument focused "on the individual elements rather than the overall trade dress." 814 F.2d. at 350. The court continued, "whether the configuration of a machine is functional or can receive trademark protection depends on whether its design as a whole is superior to other designs, not on whether its component features viewed individually each have a function." *Id*. The court approved the district court's conclusion that protectible trade dress features were those that were "not essential to the overall function of the table," and found persuasive the fact that other folding table manufacturers had products that varied significantly from the plaintiff's table with respect to these individual features. *Id*. *See also Service Ideas, Inc. v. Traex Corp.*, 846 F.2d 1118, 1123-24 (7th Cir. 1988) (while each of the individual parts of an insulated beverage server "may well be functional" the combination is not functional); and *Computer Care v. Service Systems Enterprises, Inc.*, 982 F.2d 1063, 1071 (7th Cir. 1992) (while certain elements of a form for recording information about an auto repair facility are functional, the "overall format" is protectable as trade dress).[4]

This principal has specifically been recognized in connection with cases involving chairs. *See Gasser Chair Co., Inc. v. Infanti Chair Mfg. Corp.*, 943 F.Supp. 201, 204 (E.D.N.Y. 1996), *aff'd* 47 U.S.P.Q.2d 1208, 1214 (Fed. Cir. 1998) ("the issue of functionality must be decided by focusing on the overall appearance of the product and not by breaking it down into discrete elements which are attacked as being separately functional."); *Krueger International, Inc. v. Nightingale, Inc.*, 915 F. Supp. 595, 607-08 (S.D.N.Y. 1996) (plaintiff "has a protectable trade dress in the overall look of its Matrix chair. Although each of the individual design elements serves both functional and aesthetic purposes, it is the overall look that I must consider. * * * The function of a chair is to provide a place to sit. A stacking chair, in addition, must stack. On the evidence before me, many other designs serve these functions equally well. Therefore, I find that the design features at issue are ornamental, not functional."); and *Contour Chair Lounge Co.*,

---

[4] This is clearly the law of the Seventh Circuit, and to the extent that Specialized relies on contrary authority from other Circuits, it should be disregarded.

*Inc. v. True-Fit Chair, Inc.*, 648 F.Supp. 704, 710 (E.D. Mo. 1986) (configuration and total image of chair was nonfunctional because "[t]his particular overall appearance of the chair is not necessary to its function. A variety of other chair designs functioning in the same manner as the Contour chair, but without its distinctive configuration, are available to manufacturers seeking to compete with Contour.").

Likewise, the combination of individual elements of the B-Back trade dress is not essential to the overall function of the chair and is entitled to trade dress protection. Consequently, Specialized's claim that the X-frame and double tube and channel features were functional because these features were mentioned in undisclosed patents is irrelevant to the overall question of whether the trade dress of the Clarin chair was entitled to registration, and cannot be the basis for finding fraud.

### C. Plaintiff Has Not Proved By Clear And Convincing Evidence That Clarin's Statement To The PTO Regarding The Purpose Of Its B-Back Chair Design Was Material Or Made With Fraudulent Intent

Plaintiff also maintains that Clarin committed fraud on the PTO because it told the PTO that the B-Back design was a modernization of a prior design, when, according to Plaintiff, it was actually designed to solve a significant and dangerous structural defect in Clarin's previous chairs (a characterization that Clarin denies).[5] This is not clear and convincing evidence that Clarin committed fraud on the PTO, because Plaintiff has not shown that the statement made by Clarin was false, was material to the examiner's decision to grant the registration, or was made with fraudulent intent.

First, Mr. Peterson's statement that the B-Back is a modernized version of the A-Back is true. Steve Luttazi testified that the B-Back chair is more popular than the A-Back chair in the stadium and arena market, because it is considered to be a more modern version of the Clarin Chair. (TR 795.) Because Mr. Peterson's statement to this effect was the truth, it cannot be the basis for establishing fraud on the PTO.

Moreover, in order for a feature to be functional, it must be "essential to the use or purpose of the article" or affect "the cost or quality of the article." *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 851 (1982). Clarin's expert witness testified that a trademark applicant is not obliged to disclose to the examiner the reason for an improvement that may be in

13

an applied-for configuration, so Clarin didn't need to tell the reason why B-back was improvement over A-Back. (TR 566-67, Kera.) In addition, there was no evidence that the B-Back design, standing alone, was "essential" to the use of the folding chair, or that it affected the cost or quality of the chair. In fact, Specialized's own witness admitted that the B-Back design was not functional. (TR 274, H. Hergott.) Finally, even if the B-Back seat rest, standing alone, did serve a function, the overall design of the B-Back trade dress is still not functional, because the trade dress is comprised of a variety of elements, including the seat back, the X-frame, the cross bars, the protruding feet, and the double tube and channel, the combination of which is clearly not functional. *See Vaughan*, 814 F.2d at 350. For these reasons, Plaintiff has not established clear and convincing evidence that Clarin committed fraud on the PTO by stating that the B-Back is a modern version of the chair.

### D. Plaintiff Has Not Proved By Clear And Convincing Evidence That Clarin's Statement To The PTO About Being The Only Manufacturer Of The B-Back Trade Dress Was False Or Made With Fraudulent Intent

Finally, Plaintiff claims that it was fraud for Clarin to tell the PTO that it was the only manufacturer using the double tube and channel X-frame design for folding chairs, when Clarin knew that Specialized was selling a similar chair. Again, this is not clear and convincing evidence that Clarin made a materially false statement to the PTO, or intended to deceive the PTO, because "[a] trademark applicant must disclose only those users who are known to have a right to use the same or a related mark. . . . The applicant has no obligation, however, to disclose known users believed to be infringing the applicant's rights in the mark." *Dial-A-Mattress Operating Corp. v. Mattress Madness, Inc.,* 841 F.Supp. 1339, 1353 (E.D.N.Y. 1994). *See also Heaton Enterprises of Nevada, Inc. v. Lang*, 7 U.S.P.Q.2d 1842 (TTAB 1988) ("Where, as in this case, the affiant believed and was claiming that it had a right to the mark superior to that of other parties who might be using it, fraud is not shown by proof that registrant was aware of those other uses."); and *Space Base, Inc. v. Stadis Corp.*, 17 U.S.P.Q.2d 1216 (TTAB 1990) ("it is settled that there can be no fraud by reason of a party's failure to disclose the asserted rights of another person, including a prior applicant, unless that person is known to possess a superior or a clearly established right to use . . ..").

---

[5]Clarin still sells the A-Back chair. If the design was truly a "dangerous structural defect," as Plaintiff claims, Clarin would not be selling the chair.

14

Since Clarin clearly views Specialized as an infringer, Clarin was under no obligation to disclose known infringers to the PTO. Consequently, Clarin's representation to the examiner that it was the only known manufacturer of chairs having design features embodied by the pending trade dress application was not false or fraudulent. Plaintiff therefore has not established by clear and convincing evidence that Clarin committed fraud on the PTO by identifying itself as the only manufacturer of chairs featuring the B-Back trade dress.

## CONCLUSION

Mr. Kera, whose expertise Specialized stipulated to, rendered his opinion, based on his expertise, the TMEP, and his review of the file history materials (Exhibit 6 to his report), that fraud was not committed on the PTO: "All of the relevant information that the examiner requested was provided. No relevant information, as far as I can tell, was withheld, and, therefore, under the principles concerning trademark fraud, there was no fraud in the prosecution of the application." (TR 481-82, Kera.) Mr. Kera's opinion stands unrebutted, and Plaintiff has not proved any of the requisite elements of fraud by clear and convincing evidence. Accordingly, Clarin respectfully requests that this Court enter judgment in its favor as to Plaintiff's fraud claim.

Dated: January 18, 2007                    Respectfully submitted,

/s/ Laurie A. Haynie
James P. White, Esq.
Laurie A. Haynie, Esq.
J. Aron Carnahan, Esq.
WELSH & KATZ, LTD.
120 S. Riverside Plaza•22nd Floor
Chicago, IL  60606
(312) 655-1500

Robert F. Rabin
Robbins, Salomon & Patt, Ltd
25 East Washington Street
Suite 1000
Chicago, IL 60602
(312) 456-0192
Counsel for Defendant–Counter-Plaintiff
Greenwich Industries, L.P. d/b/a Clarin

15

**Certificate Of Service**

I hereby certify that on January 18, 2007, I electronically filed the foregoing Clarin's Motion for Judgment as a Matter of Law on Plaintiff's Claim that Clarin Engaged in Fraud on the Patent and Trademark Office with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all Filing Users, including the following:

**Anthony S. DiVincenzo**
asdlawyer@aol.com

**Robert F. Rabin**
rfr@rsplaw.com

/s/ Laurie A. Haynie____
Counsel for Defendant