IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SPECIALIZED SEATING, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05 C 1197 |
| | ) | |
| GREENWICH INDUSTRIES, L.P. d/b/a CLARIN | ) | Judge Holderman |
| | ) | |
| Defendant, | ) | |

**PLAINTIFF'S RESPONSE TO CLARIN'S MOTION FOR
JUDGMENT ON PLAINTIFF'S FRAUD CLAIM**

Clarin has renewed its motion for a finding that Specialized Seating has failed to prove that Clarin procured its registered trademark through fraud. This motion was denied at the close of Plaintiff's case. (Tr. 381-382). For the reasons stated herein, the motion should again be denied. The evidence in this case establishes that Clarin made one or more material misrepresentations of fact to the Patent and Trademark Office which it knew to be false.

**I. Background Facts.**

Clarin filed the trademark application at issue in this case on April 15, 1999. (PX 36). The PTO refused registration on grounds of functionality and lack of inherent distinctiveness on October 22, 1999. (PX 37). The PTO requested all information regarding any Patents. (PX 37 at p.2).

On April 24, 2000, Clarin responded to the refusal. (PX 38). On page 2 of the Response Clarin claimed that the Mark "consists of design features that function in

1

and of themselves as a source-identifier, or trademark." Clarin gave an informal description of the Mark as an X-frame double tube and channel folding chair with double horizontal supports on the back and a single horizontal support on the front legs, which supports were made from double tube and channel material, and protruding rubber feet. (PX 38 at p.2). Clarin disclosed only Patent No. '058, which Clarin obtained on January 9, 1934. (PX3). Clarin argued that the '058 Patent did not preclude registration by stating:

> "Significantly, the patent states that there may be a back 'of any desired type,' a frame 'of any desired type' and rear legs 'of any desired type'

(PX 38 at p.5). Clarin also argued that alternative designs existed which allowed competition.(PX 38 at p.5).

Once again the PTO refused registration for the same reasons, including functionality. (PX 39). However, the PTO specifications requested detailed information about nine topics related to functionality of the double tube and channel X-frame design. (PX 39 at p. 2).

Clarin responded to this second refusal on July 16, 2001. (PX 40). Clarin provided answers to the specific questions of the PTO.(PX 40 at pp. 2-6). Clarin's answers indicated uniformly that competitors chairs had the same attributes as Clarin's and that alternative designs existed. Clarin continued to argue that its overall design was not a competitive necessity and therefore, the design was not functional. (PX 40 at pp. 6-10).

The PTO again refused registration. (PX 42). The PTO asserted that

Clarin had admitted that the double tube and channel has a function in relation to durability and resiliency.(PX 42 at p.2). Thus, the functionality refusal was made final. The PTO also made the refusal on distinctiveness. (PX 42 at p.3).

Clarin then filed a Request for Reconsideration. (PX29). The Request for the first time included a written description of the mark, which specifically described what we have at the trial referred to as the B-Back. The Request also attached the Supplemental Declaration of William Peterson. (PX43). The supplemental declaration stated at Paragraph 4 that "In the earl 1980's, prior management slightly modernized the configuration of the outer edges of the back support of the 'A Back" chair. This chair, which we call the "B Back " chair and is the subject of this trademark application, is our flagship product." (PX 43 at p.1). He noted that the only difference between the earlier chairs and the B Back was the curvature of the sides.

The PTO reversed field and granted the application. Clarin obtained a registered Trademark on January 13, 2004. (PX1).

**II. Legal Standards for Fraud**.

"A Trademark applicant commits fraud in procuring a registration when it makes material representations of fact in its declaration which it knows or should know to be false." *Medinol Ltd. v. Neuro Vasx, Inc.*, 67 U.S.P.Q.2d 1205, 2003 WL 2189780 (T.T.A.B. 2003) and *Torres v. Cantine Torresella S.r.1.*, 808 F.2d 46, 48 (Fed.Cir. 1986). "The obligation which the Lanham Act imposes on an applicant is that he will not make **knowingly** inaccurate or **knowingly** misleading statements in the verified declaration forming a part of the application for registration. *Bart Schwartz International*

3

*Textiles, Ltd., v. F.T.C.*, 289 F.2d 665, 669 (CCPA 1961) (emphasis in original). Thus, while a false statement may be made inadvertently, only a false representation only made knowingly is actionable. *Zip Dee, Inc. v. Dometic Corporation*, 900 F.Supp 1004 (N.D.Ill. 1995).

While fraud in procuring a trademark must be proven by "clear and convincing " evidence, that is no different than any claim for fraud. Clear and convincing evidence is the burden of proof between a preponderance of the evidence and the standard of proof in a criminal case, beyond a reasonable doubt. Circumstantial evidence is sufficient to establish fraud even in a criminal case. *U.S. v. Stephens*, 421 F.3d 503 (7th Cir. 2005). In *Stephens*, the Seventh Circuit upheld a conviction for wire fraud under the beyond a reasonable doubt standard. The Court explained,"[b]ecause direct evidence of intent to defraud is rare, " 'specific intent to defraud may be established by circumstantial evidence and by inferences drawn from examining the scheme itself that demonstrates that the scheme was reasonably calculated to deceive...'" *id* at 509 (quoting *U.S. v. Owens,* 301 F.3d 521, 528 (7th Cir. 2002) quoting *United States v. Paneras*, 222 F.3d 406, 410 (7th Cir. 2000)). Moreover, the entirety of the scheme must be considered and not each individual part in drawing those inferences. *Id.* at 509. Thus, circumstantial evidence of fraud on PTO is sufficient.

### III. The Record Contains Sufficient Evidence of Fraud.

#### A. Clarin's Misrepresentations

The record contains evidence of numerous omissions, misleading

statements and affirmative misrepresentations made by Clarin during the prosecution of its Trademark Application. These misrepresentations include:

1. Clarin misrepresented that it was using the described mark, which specifically included the reference to two cross bars with a flat channel and rolled edges at the back bottom of the chair, in commerce when Clarin manufactured no such chair. (Testimony of R. Schoenfeld at Tr. 75-76);

2. Clarin disclosed only one patent and did not disclose at least the '248 Patent (PX2); the '803 Patent (PX4); the '331 Patent (PX 5); and the '331 Patent (PX 6);

3. Clarin submitted the Supplemental Declaration of William Peterson which claimed the B Back was merely a modernization of the previous chairs, without disclosing that the B Back was designed to increase the strength of the back of the chair for safety reasons; (PX 43 at ¶ 4 and Peterson Dep at pp. 81-83 and Clarin's Opposition to Specialized seating's Motion for Preliminary Injunction at p.14);

4. Clarin claimed that the B Back was the flagship of its line when the B Back is merely an option on its chairs, significantly less than one half of its chair sales are B Backs with stretchers and not K-braces (PX 43, PX 9A, PX9B,

5. Clarin failed to provide the PTO with sales figures for the B Back

5

chair (PX 43, R. Schoenfeld Testimony at Tr. 175-78).

The only misrepresentation that Clarin really disputes is their claim that Mr. Peterson's assertion that the B Back chair was true because it was a modernization. This semantic argument is disingenuous. Even if the statement were literally true, it is grossly misleading because there is no disclosure of the fact that Clarin designed the B Back to improve the strength of the chair. *Stephens, supra* at 507. Thus, the record supports the first element of a fraud claim- the existence of false misrepresentations or omissions.

### B. Clarin's Misrepresentations Were Material.

The misrepresentations were material because the record establishes that the examiner only issued the trademark in reliance on these misrepresentations.

### 1. The Misrepresentation concerning of the Mark.

As Mr. Kera conceded, if Clarin did not use the mark prior to the filing, the mark is void *ab initio* and fraudulently obtained. Defendant argues in response that minor differences between the mark in the application and the mark as actually used can be overlooked. However, Mr. Kera admitted that the question of whether the difference was material or immaterial was for the examiner to decide. (Testimony of D. Kera Tr. 587). Further, he admitted that he would need to know what chair was used in commerce and what where the differences.(Testimony of D. Kera Tr. 587). Clarin's misrepresentation prevented the examiner from reaching that issue. As to materiality, the Court in *Torres*, *supra* at 49 noted that the failure to disclose a change of the mark on a renewal application was material and that materiality of the difference was not for

the trademark owner to decide.

## 2. The Misrepresentations of Non-functionality

The non-disclosure of the patents and Mr. Perterson's misrepresentation of the B Back as merely ornamental involve the issue of functionality. Defendant presents several arguments as to the materiality of these misrepresentations.

### a. The Other Patents

First, defendant argues that the Trademark Manual of Examining Procedure states that a patent which does not claim the features of the mark or references them as only arbitrary or incidental is of little significance. However, The TMEP in effect at the time of the examiner requested the patent information, as Mr. Kera admitted, stated clearly that the applicant should be requested to provide patents of the configuration or "similar configurations" ( (Exhibit 11 to Kera Report DX 209 at CL 5729 and Testimony of D. Kera at Tr. 508). Since as Mr. Peterson stated in his Supplemental Declaration in paragraph 3, the earlier models differed only as to the back, they certainly were similar. (PX 43).  As Mr. Kera admitted, the examiner should go beyond the claims and look at the drawings. (Testimony of D. Kera at Tr. 510). It must also be remembered that the examiner asked for all patents.

Second, defendant argues that each non-disclosed patent was merely cumulative. However, defendant ignores the fact that the only disclosed patent, the '058 patent, specifically identified the frame and material as incidental features and that defendant specifically argued that fact to the examiner.(Testimony of D. Kera at Tr. 513-14 and PX 29). The fact is critical because the TMEP and case law note that a

7

patent is of less significance if it discloses a feature as incidental. Moreover, the '058 patent does not show a cross bar on the rear legs.

In light of those facts, the non-disclosed patents are of greater import because they directly explain the functionality of the key features of the Clarin chair. The '048 patent describes the double tube and channel x frame as the preferred embodiment of the invention, which is to create a folding chair with maximum strength with a minimum of material that would stack in a minimum of space. (PX2). None of these matters are disclosed in the '058 patent, which Clarin opted to disclose.

Defendant argues that its disclosures of its trade publications and ads disclose these functional features. Interestingly, Clarin tried to minimize the import of these materials before the PTO by suggesting that all manufacturers make the same claims. (PX40). These arguments before the PTO are exactly why it was important to disclose the patent. The patents specifically establish that no other manufacturer is making similar claims of functionality.

Similarly, the '218 patent specifically **claimed** a functional advantage for the double tube and channel frame. (PX6). Even Mr. Kera recognized that the '218 patent had some significance. (Testimony of D. Kera at Tr. 543). It is a critical omission because the case law establishes that a claimed feature is very relevant to a functionality determination.

Defendant suggests that the disclosure of the double tube and channel in its promotional materials is sufficient disclosure of the advantages of the material for use in connection with the ganging devices. Defendant states that those materials

8

disclose that the channel provides a flat surface for riveting. Defendant points to no disclosure that the use of the double tube and channel makes the ganging device unobtrusive (PX 6 at col.1 line 30-38).

Next, the foot patent, the '803 patent, should not have been disclosed, according to defendant, because it merely related to a means of attaching the foot. This is simply wrong. The claims directly state that a chair tip is claimed as the invention. Simply, because a n expert says the patent does not claim the foot is no reason for this Court to ignore the plain language of the patent. (PX 4), Moreover, the patent disclosed another function of the double tube and channel which is not disclosed in the only patent given to the examiner. The function is the use of the tubes for fastening the foot to the chair. (PX4 at p.3).

Lastly, the '331 patent relating to the arms discloses that the arm utilizes the space created by the curvature of the back, a space that would not be available on alternative designs such as the arch back. (PX5). The other material does not disclose this advantage.

### b. Mr. Peterson's Misrepresentation Regarding the B Back

Defendant seeks to justify Mr. Peterson's misrepresentation because Mr. Kera testified that an applicant is not required to disclose the reason for an improvement. However, once a disclosure is made, it can not be false. Clarin opted to make a claim that the B Back was merely an incident or arbitrary feature.(Testimony of D. Kera at Tr. 520-23). Having made that claim, Clarin can not withhold information that the B Back design is functional because it adds strength to the chair.

The misrepresentation was material because the record establishes that the examiner only issued the trademark in reliance on these misrepresentations. Critically, after three refusals on functionality, the examiner changed his mind. The issue here is what caused him to do that. *Zip Dee, supra* at 1012. The only new information raised in the Request for Reconsideration concerning functionality was the amendment of the description to specifically claim the B Back and Mr. Peterson's false assertion that the B Back was a slight modernization. After receiving that misrepresentation the refusal on functionality was reversed.

### c. The Overall Design Argument.

Defendant also argues that the misrepresentations were not material because they do not go to the overall design of the chair. According to defendant the false information relates only to the individual features. Plaintiff disagrees with the defendants view of "overall design" functionality. Due to time constraints, Plaintiff can not fully address the issue in great detail. However, Plaintiff will more fully explore the point in closing argument.

Yet, certain matters are particularly relevant for this motion. First, Mr. Kera concedes and states that the examiner should examine the functionality of each feature. (Testimony of D. Kera Tr.519-20 and DX209 at Ex 12 at CL 5742). Second the TMEP cites several cases that allow a finding of functionality after consideration of the individual features. *Id.* Third, the law provides that the overall configuration of functional features of the product may be protectible only if they are configured in an arbitrary or fanciful way. *TrafFix Devices, Inc. v. Marketing Displays, Inc.*,532 U.S. 23

10

(2001) and *Antioch Company v. Western Trimming Corporation*, 347 F.3d 150 (6th Cir. 2003). The only claimed arbitrary element here was the B Back and the fact that the B Back was not arbitrary was withheld from the examiner.

In addition, after *TrafFix Devices*, the Courts should look to the core feature of the trade dress to determine if it is functional. Here that is the double tube and channel x- frame. The evidence is clear that those core features are functional. *See Antioch, supra* and *Berlin Packaging, LLC v. Stull Technologies, Inc.* 381 F Supp.2d 792 ( N.D.Ill. 2005).

In light of the current law, the failure to disclose the patents and other materials to the PTO was material.

### C. There Was Intent.

As noted above, the key element of the claim is that Mr. Peterson knew that the B Back was functional and yet, claimed that it was merely and incidental change to the chair. This allows a finding of intent. Moreover, the totality of the evidence shows that Clarin focused on the patent that referenced the frame as incidental, withheld vital sales figures which should have been disclosed, (Testimony of D. Kera at Tr. 564-65), and argued that these materials established that the mark was non-functional and distinctive. Since Defendant came forward with no evidence explaining these omissions, the only permissible conclusion is that Clarin acted with intent. There is simply no other evidence of negligence.

### CONCLUSION

For the above reasons, the motion for judgment should be denied.

        Respectfully submitted,

        /S/ Anthony S. DiVincenzo
        Anthony S. DiVincenzo

DiVincenzo Schoenfield Swartzman
33 North LaSalle Street
Suite 2900
Chicago, IL 60602
312/334-4800

## **CERTIFICATE OF SERVICE**

  I, the undersigned, an attorney, being duly sworn on oath depose and state that on January 19, 2007, I caused a copy of the foregoing Plaintiff's Response To Clarin's Motion for Judgment on Plaintiff's Fraud Claim to be served on James P. White, Esq., Welsh & Katz, Ltd., 120 S. Riverside Plaza, 22nd Floor, Chicago, IL 60606 using the CM/ECF system which will sent notification of the above filing to all Filing Users.


             /s/ Anthony S. DiVincenzo
              Anthony S. DiVincenzo


DiVincenzo Schoenfield Swartzman
33 North LaSalle Street
29th Floor
Chicago, IL 60602
Telephone No. (312) 334-4800
Attorney No. 39591